UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NURO B. DEDEFO,

Plaintiff,

v.

CITY OF MINNEAPOLIS, ROBERT OLSON, CHRISTOPHER TUCKER, PHILLIP GANGNON, CEDAR TOWING COMPANY, and THOMAS MICHAEL MUDEK,

Defendants.

CIVIL NO. 01-418 (RHK/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on July 3, 2001 upon Plaintiff's Motion for Default Judgment against Defendants Cedar Towing and Mudek [Docket No. 8], Defendant Cedar Towing's Motion for Relief of Default, for Leave to File Untimely Answer, to Amend Pretrial Schedule, and to Dismiss [Docket No. 16], and Defendant Mudek's Motion for Relief of Default, for Leave to File Untimely Answer, to Amend Pretrial Schedule, and to Dismiss [Docket No. 21].[1] John L. Lindell, Esq. appeared on behalf of Plaintiff; Scott Reeves, Esq. appeared on behalf of Defendant City of Minneapolis; David McCormick, Esq. and Albert Garcia, Esq. appeared on behalf of Defendant Cedar Towing; John Westrick, Esq. appeared on behalf of Defendant Mudek.

The matter is before the undersigned Magistrate Judge for a Report and Recommendation to the District Court pursuant to the provisions of 28 U.S.C. §636 (b)(1)(B).

Based upon the following Findings of Fact/Report, it is recommended that (1) Defendant Mudek's Motion for Relief of Default, for Leave to File Untimely Answer, and

---

1 The portions of Defendants' Motions purporting to be Motions to Dismiss were stricken without prejudice by this Court's Order of July 3, 2001, since they were untimely. [Docket No. 26].

FILED AUG - 9 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

to Amend Pretrial Schedule [Docket No. 21] be granted, (2) Plaintiff's Motion for Default Judgment against Defendants Cedar Towing and Mudek [Docket No. 8] be denied as to Defendant Mudek, (3) Defendant Cedar Towing's Motion for Relief of Default, for Leave to File Untimely Answer, and to Amend Pretrial Schedule [Docket No. 16] be denied, and (4) Plaintiff's Motion for Default Judgment against Defendants Cedar Towing and Mudek [Docket No. 8] be granted as to Defendant Cedar Towing with respect to Counts Five and Six of the Complaint.

## FINDINGS OF FACT/REPORT

Plaintiff filed the Complaint in this case on March 7, 2001. [Docket No. 1]. All of the Defendants were served with the Summons and Complaint on March 21, 2001. [Docket No. 2]. Defendants Minneapolis, Olson, Tucker, and Gangnon filed a joint Answer on March 26, 2001. [Docket No. 3]. The Court then issued an Order requiring the parties to file a Rule 26(f) report no later than May 11, 2001. Defendants Minneapolis, Olson, Tucker, and Gangnon, together with Plaintiff, filed a Report of Rule 26(f) Meeting on May 7, 2001. [Docket No. 10]. Following a Pretrial Conference with those parties, on May 21, 2001, the Court issued a Pretrial Scheduling Order. [Docket No. 11].

As of April 26, 2001, Defendants Cedar Towing and Mudek had not responded to the Complaint. Accordingly, on that date, a default was entered against Defendants Cedar Towing and Mudek by the Clerk of Court pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. [Docket No. 7]. Plaintiff moved for Default Judgment against Defendants Cedar Towing and Mudek on May 4, 2001, [Docket No. 8], supported by Memorandum filed May 29, 2001. [Docket No. 13]. By Order dated June 5, 2001, this Court required that the pleadings in support of said Motion be served upon said

Defendants, and a hearing date was established. [Docket No. 14]. On June 21, 2000, Defendants Cedar Towing and Mudek filed their Motions seeking relief from the Clerk's entry of default, [Docket Nos. 16 and 21], and each of these Defendants also filed Proposed Answers [Docket Nos. 15 and 20], which they denominated simply as Answers.

## I. DEFENDANTS' MOTIONS FOR RELIEF FROM DEFAULT

In Oberstar v. F.D.I.C., 987 F.2d 494, 504 (8th Cir.1993), the Court of Appeals noted that there is a "strong judicial policy against default judgments" and that the "judicial preference for adjudication on the merits goes to the fundamental fairness of the adjudicatory process." The Court may set aside an entry of default "for good cause shown." Fed. R. Civ. P. 55(c).[2] In deciding whether or not to set aside a default, the Court is to look at the totality of circumstances, and specifically at three factors: blameworthiness or culpability of the defaulting party; whether the defaulting party has a meritorious defense; and whether the other party will be prejudiced if the default is excused. Johnson v. Dayton Elec. Manuf. Co., 140 F.3d 781, 784 (8th Cir. 1998).

### A. Behavior of the Defaulting Parties

In applying the Rule 55(c) standard, the Court must "focus heavily on the blameworthiness of the defaulting party." Johnson, 140 F.3d at 784. If the Court finds that the defaulting party is guilty of "contumacious or intentional delay or disregard for deadlines and procedural rules," that party's conduct will rarely, if ever, be excused, regardless of the existence of defenses or prejudice. Johnson, 140 F.3d at 784 (finding behavior of defaulting party did not rise to this level, and therefore setting aside the default).

---

2

Setting aside a default under Rule 55 is to be distinguished from setting aside a default judgment, which is governed by Fed. R. Civ. P. 60.

Therefore, our first inquiry is into the character of the actions taken by Defendants Cedar Towing and Mudek, to determine whether they have shown good cause why the Court should set aside the entry of default. In doing so, we also observe that the Court of Appeals has recently cautioned against "focus[ing] narrowly on the negligent act that caused the default" without considering all of the relevant circumstances surrounding the default. Union Pacific RR Co., v. Progress Rail Servs. Corp., – F.3d --, 2001 WL 766775 at *1 (8th Cir. July 10, 2001)(vacating default judgment where defendant failed to file answer because of recording error by its legal department).

In Union Pacific the court embellished on the relevant factors for consideration: the danger of prejudice to the non-moving party, the length of the delay, the delay's potential impact on judicial proceedings, the reason for the delay (including whether it was within the reasonable control of the defaulting party), and whether the defaulting party acted in good faith.[3] Id. In analyzing whether Defendants have shown good cause why the default should be set aside, we also are guided by the observation of the Court of Appeals that "it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." Johnson, 140 F.3d at 784 (citation omitted).

As to Defendant Mudek, we are satisfied that his explanation for his failure to respond warrants relief. It has not been made to appear, however, that the failure of Defendant Cedar Towing to respond to the Complaint was excusable.

---

3

Although Union Pacific dealt with the more stringent standards applicable to a motion for relief from default judgment under Fed. R. Civ. P. 60(b), the factors are also relevant to motions under Fed. R. Civ. P. 55.

Defendant Mudek's Affidavit establishes that he gave the Summons and Complaint to Blake immediately after receiving them, a fact substantiated by Blake's Affidavit. Mudek Aff., ¶ 2; Blake Aff., ¶ 7. Defendant Mudek understood that the matter was being handled by the attorney for Cedar Towing, a fact also attested to by Blake. Mudek Aff., ¶ 3; Blake Aff., ¶ 7. Defendant Mudek justifiably relied on the assurance given to him by his employer and had no reason to believe that an Answer would not be filed on his behalf. Defendant Mudek was presented with a lawsuit that, at least on its face, concerned an incident that took place while he was working in his capacity as a tow truck driver for Cedar Towing. He presented it to his employer, and was told that they would handle the case for him. His behavior showed an intent to respond to the Complaint.

The Court is provided almost no information concerning the reason why Cedar Towing failed to respond to the Complaint, either on its own behalf or on behalf of Defendant Mudek. The entirety of the facts put before the Court by Defendant Cedar Towing to justify its default consist of the following: Al R. Blake, corporate Secretary of Defendant Cedar Towing, avers that he received the Summons and Complaint in this action in March 2001. Blake Aff., ¶ 2. At some unspecified time, Blake also received Mudek's copy of the Complaint, and told Mudek that Cedar Towing would handle the case for him. Blake Aff., ¶ 7. According to Blake, he was "under the impression that this matter had been turned over to Cedar Towing Inc.'s attorney." Blake Aff., ¶ 3. Blake provides no basis for this "impression." Blake now "understands" that his attorney "states" that the papers were never received there. Blake Aff., ¶ 4. Blake opines that "[i]t is possible the papers were misplaced because Cedar Towing Inc. is in the process of being moved . . . and the papers could have become lost within the office." Blake Aff., ¶ 5.

Parties are not entitled to disregard litigation until it reaches a critical point. See Inman v. American Home Furniture Placement, Inc., 120 F.3d 117 (8th Cir. 1997)(upholding lower court's refusal to set aside default where defendants were finally "spurred to action" only after default had been entered and hearing set on motion for default judgment). Courts presented with similar circumstances have been unwilling to find "good cause" to remove a default from the record. See Senn v. Harrison Transport Co., Inc., 1987 WL 38480 (4th Cir. Aug. 14, 1987)(refusing to set aside default where defendant did not offer explanation for delay in answering or disappearance of documents); United States v. Nalls, 177 F.R.D. 696 (S.D. Fla. 1997)(refusing to set aside default because party's conduct was culpable where it had clear notice of obligation to respond to complaint and failed to do so); Nelson v. Coleman Co., 41 F.R.D. 7, 10 (D.S.C. 1966)(refusing to set aside default where defendant did not offer explanation as to why more diligence was not used in delivering complaint to appropriate person for response; held merely stating that failure to answer was due to inadvertence or oversight was insufficient without appropriate factual showing).

In Pretzel & Stouffer v. Imperial Adjusters, Inc., 28 F.3d 42 (7th Cir. 1994), the Seventh Circuit upheld an entry of default where the defendant had presented no good cause for the late submission of its Answer. The defendant's asserted "communication problems" and calendaring error were not sufficient to provide good cause under Rule 55. The court held that

> routine back-office problems do not rank high in the list of excuses for default. . . . Counsel's mistake regarding the date of the hearing, and communication problems with clients, were just such 'routine' problems. They do not establish good cause for defaulting.

Pretzel, 28 F.3d at 46 (citation omitted).

This Court must make its Recommendation based upon the facts of record, but there are no facts upon which this Court could truly ascertain a justification for the failure of Cedar Towing to respond, let alone that the failure was without blame or culpability. It is as plausible that the corporate Secretary of Cedar Towing simply ignored the Summons and Complaint as it is that he took any action to cause a response to be filed. We are unable on the facts before us to reconcile the conduct of Cedar Towing with actions of a party taken in good faith. The facts of this case more closely parallel those in the cases in which default was found to be appropriate.

The instant case is readily distinguishable from Union Pacific, where the court found that the defendant "committed a single, simple error" that left it unaware of the lawsuit. Union Pacific, 2001 WL 766775 at *1. In the instant case, Defendant Cedar Towing failed to treat the Complaint with the care it would presumably afford other important documents.[4] Cedar Towing's default was not the result of a simple transcription error. According to the Affidavits submitted to the Court, nobody seems to know what Cedar Towing did after the Summons and Complaint were served. All anyone knows is that Blake had the impression that the papers somehow got to the lawyers, or now thinks maybe they could have gotten lost. In addition to apparently disregarding the Complaint served upon it, Defendant Cedar Towing also ignored the Complaint given to them by Defendant Mudek. There is no indication that Defendant exercised proper diligence in dealing with this lawsuit.

---

[4] At the hearing, counsel for Defendant Cedar Towing asserted that Blake had treated the Complaint with the same care as he would have applied if he had been handed the winning lottery ticket. This statement was not made or sworn to by Blake. (If it had been, it would seem to provide fertile ground for undermining his credibility on other substantive issues.)

## B. Existence of a Meritorious Defense

The second factor to consider is whether the defaulting party has a meritorious defense to the action. In determining whether a defaulting party has sufficiently demonstrated the existence of a meritorious defense, the Court must focus on "the sufficiency of the factual statement contained in the moving papers. Unlike the simple notice pleading required in original actions, the rule relating to relief from default judgments contemplates more than mere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense." Olson v. Stone, 588 F.2d 1316, 1319 (10th Cir. 1978)(affirming entry of default judgment by district court).

The proffer of evidence by the defaulting party must include the assertion of supporting facts by testimony or affidavit. See Sony Corp. v. Elm State Electronics, Inc., 800 F.2d 317 (2d Cir. 1986)(upholding default since affidavits were no more than "sworn conclusory denials"; reversing district court on issue of damages); In re Air South Airlines, Inc., 249 B.R. 112, 116 (D. S.C. 2000)("A proffer of evidence requires more than a mere claim of a defense; rather, it involves the assertion of facts or law by testimony or affidavit, on which the defense is based.")(vacating default judgment because this standard was met by defaulting party). A sworn statement by a party or his attorney merely stating that valid defenses are believed to exist does not provide the necessary support. See Elm State, 800 F.2d at 320-21 ("the moving party on a motion to reopen a default must support its general denials with some underlying facts."). See also I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc., 986 F. Supp. 816, 824 (S.D.N.Y. 1997)(moving party must make some showing of existence of facts to support defense, enough to raise serious questions as to the validity of the allegations in the complaint)(finding affidavits submitted by defaulting party were sufficient).

Plaintiff's Complaint alleges claims against Defendants Cedar Towing and Mudek for violation of 42 U.S.C. §1983, violation of Minnesota's civil rights laws, assault, false imprisonment, battery, and intentional infliction of emotional distress. Neither Defendant has made a sufficient showing that it has a meritorious defense to any of the claims in the Complaint. Defendant Cedar Towing asserts in its Memorandum that it will rely on a self-defense argument asserted by Defendant Mudek, in addition to the defenses that Defendant Cedar Towing is not a state actor, that Defendant Mudek's actions were outside the scope of his employment, and that there is no *respondeat superior* liability under §1983.

Cedar Towing has not provided the Court with a single fact to support its conclusory (and unsworn) assertion of these defenses. Defendant Mudek's only evidence as to the validity of his defense reads as follows:

> I will be asserting the defense of self-defense and will also challenge the sufficiency of the Complaint and thereby subject matter jurisdiction. Mudek Aff, ¶6.

His attorney sought to supplement this statement by including his own Affidavit, which states:

> I have reviewed the police reports and the Plaintiff's pleadings, and it is my opinion, as an officer as [sic] the above-designated Courts, that Thomas Mudek has a valid self-defense claim which will survive summary judgment. Furthermore, it is my opinion, as an experienced attorney, that the Complaint fails to state a section 1983 cause of action against Cedar Towing and Mudek and may well fail to state a section 1981 cause of action against them. Westrick Aff., ¶6.

The general, conclusory assertions of Defendants Mudek and their attorneys that they have defenses to Plaintiff's claims are insufficient to constitute good cause to overturn the default against Defendant Cedar Towing. See also Sony Corp. v. Elm State

Electronics, Inc., 800 F.2d 317 (2d Cir. 1986). Compare Johnson, 140 F.3d at 785 (affidavit from employee of company who inspected equipment stating that fan parts were not manufactured by that company sufficient proffer to establish meritorious defense in product liability action). Neither Defendant has suggested what facts would support a finding of self-defense, nor provided facts (other than assertions) to establish that could preclude it from being considered a state actor. There are insufficient facts to support the conclusion that either party has a meritorious defense to any of Plaintiff's claims.[5] This factor weighs against granting Defendants' Motions for Relief from Default.

### C. **Prejudice to Plaintiff**

In order for a court to find that the non-defaulting party would be prejudiced, the court must conclude that setting aside the default would affect his case in a concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. See Johnson, 140 F.3d at 785. We do not find that Plaintiff will suffer the sort of prejudice which is contemplated by the Court of Appeals in considering a Motion of this kind. Plaintiff has been forced to expend time and money in filing for default and moving for default judgment, and his efforts to obtain compensation for his injuries have been delayed, but this is not the type of prejudice ordinarily considered for purposes of a motion to set aside a default.

However, this factor does not carry nearly enough weight to counter the high degree of culpability in Defendant Cedar Towing's conduct. If the Court were to require a showing of certain specific types of severe prejudice to sustain an entry of default, there

---

[5] As discussed later in this Report, it appears as a matter of law that Cedar Towing may have a defense to the claim asserted under 42 U.S.C. §1983.

would be no incentive for defendants to respond to complaints served upon them until after default had been entered.

D. **Conclusion**

Application of the appropriate legal factors to the totality of the facts of this case leads us to the recommendation that the District Court grant the Motion of Defendant Mudek, and deny the Motion of Defendant Cedar Towing for Relief from Default.

Defendants emphasize their view that Plaintiff has not suffered prejudice as defined in the authorities as a basis for granting their motions. As we have explained, this factor is not the dominant factor to be considered. Instead, the Court of Appeals has emphasized the factor concerning the explanation offered by the defaulting parties. There are many reasons for this view, not least that expressed by the Court in Canup v. Mississippi Valley Barge Line Co., 31 F.R.D. 282, 283 (W.D. Pa. 1962), where the Court stated: "Calendar control by the courts and the setting of fixed dates for the various steps to be taken in the course of litigation are among the means by which it is sought to eliminate delay. . . . To neglect and ignore a date for action in a court proceeding is in reality a thinly-veiled species of disrespect or contempt for the court."

Defendant Mudek's sworn and corroborated statement that he gave the Complaint to his employer, and was assured that his employer would handle the case provides good cause to set aside the entry of default against him. The fact that he has failed to substantiate the existence of a meritorious defense makes it a close case, but we take seriously the view that defaults are not favored. On the other hand, Defendant Cedar Towing not only failed to offer any explanation for its failure to respond, reasonable or otherwise, it offered no evidence to establish that it has any meritorious defenses. It did

not even make the pretrial disclosures required by Rule 26(a)(1).[6] It has failed to establish the good cause required to support a Motion for Relief from Default.

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

We turn now to Plaintiff's Motion for Default Judgment. This Motion is governed by Rule 55(b)(2), which provides in relevant part:

> If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

The Court ordered Plaintiff to serve Defendants with his Motion for Default Judgment, along with our Order/Notice of Hearing regarding Plaintiff's Motion for Default Judgment [Docket No. 14]. The Order/Notice of Hearing required Defendants to file any response to Plaintiff's Motion no later than June 21, 2001. Defendants Cedar Towing and Mudek each filed a Motion, Memorandum, and Affidavits on June 21, 2001. A hearing was held on Plaintiff's Motion on July 3, 2001, at which representatives for all Defendants appeared.

---

6 The failure of Defendants to provide the disclosures required by Rule 26(a)(1) when they filed their other pleadings, and their Motions seeking additional time to make those disclosures, even after serving their Motions to be relieved from default, suggests the absence of any desire to rectify the delays already occasioned by their failure to Answer.

We conclude that the procedural requirements of Rule 55(b)(2) have been satisfied. Once these procedural steps have been taken, "[t]he decision to enter default judgment is within the discretion of the trial court." United States v. Gerads, 1993 WL 114411 at *3 (D. Minn. Jan. 15, 1993)(citing FTC v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977)).

The Court of Appeals for the Eighth Circuit has stated that:

> This Circuit has not articulated specific factors that must be considered in determining whether a Rule 55(b) motion for default judgment for failure to defend should be granted. Rather, this Court has noted generally that default judgment is appropriate if the conduct is willful, contumacious or intentional.

Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996)(citation omitted). This standard parallels that for determining the culpability of a defaulting party on a motion to set aside entry of default. As we have already determined, Defendant Cedar Towing's behavior rose to the level of "willful, contumacious or intentional" conduct.

"Where the conduct of a party amounts to willful misconduct, the existence of a meritorious defense does not prohibit default judgment." Ackra, 86 F.3d at 857 (citation omitted). However, "a default judgment may not be entered on a complaint that fails to support the claim for relief and on appeal, a defaulted defendant may always challenge the legal sufficiency of the complaint allegations." In re Kasden, 209 B.R. 236, 238 (B.A.P. 8th Cir. 1997)(citing Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "[F]acts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." Kasden, 209 B.R. at 238.

Defendant Cedar Towing argues that the Court's subject matter jurisdiction is not established by the Complaint, because the Complaint fails to allege that Defendant Cedar Towing was a state actor. According to Defendant Cedar Towing, this deficiency in Plaintiff's civil rights claims leads to the conclusion that the Court does not have subject matter jurisdiction over any of Plaintiff's claims against Cedar Towing.[7]

The Court need not determine the sufficiency of Plaintiff's federal claim against Cedar Towing to conclude that its argument fails. Even if Plaintiff did not adequately plead a federal civil rights claim against Defendant Cedar Towing, that fact would not lead to the conclusion Cedar Towing advocates in its Memorandum, *i.e.*, that the Court has no jurisdiction over any of the claims alleged against Cedar Towing. That argument overlooks the implications of the supplemental jurisdiction statute, 28 U.S.C. §1367. Title 28 U.S.C. §1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(emphasis added). Supplemental jurisdiction exists over state law claims where a plaintiff alleges federal and state law claims arising out of a common nucleus of operative fact, such that a plaintiff would ordinarily be expected to try all of the claims in one proceeding.

---

7

We note that Plaintiff was acting *pro se* when he filed the Complaint, and therefore that pleading must be liberally construed. See Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir.1983). However, "[a]lthough *pro se* pleadings are to be construed liberally, *pro se* litigants are not excused from compliance with relevant rules of the procedural and substantive law." Id.

Southern Council of Indus. Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996).

The Court retains supplemental jurisdiction over Plaintiff's state law claims against Cedar Towing. The Complaint describes an incident that began between Plaintiff and Mudek and progressed to an encounter between Plaintiff and the Minneapolis police. Plaintiff alleges that he was sprayed with mace by Mudek, and then refused treatment by the police. His arrest arose out of the alleged attack by Mudek. All of Plaintiff's claims derive from a common nucleus of operative fact, and should logically be tried together. Federal jurisdiction is provided by the federal civil rights claims alleged against the City of Minneapolis and its police officers. Because the Court has original jurisdiction over these claims, the Court has supplemental jurisdiction over Plaintiff's state law claims against Cedar Towing for Violation of Minnesota Civil Rights Law (Count Five) and for Assault, False Imprisonment, Battery, and Intentional Infliction of Emotional Distress (Count Six), because they are part of the same case or controversy as the federal claims.

As to Count Four, alleging federal civil rights violations against Defendants Cedar Towing and Mudek, it is premature for the Court to decide whether or not this count states a claim. As set forth above, Defendant Cedar Towing has the right to challenge the legal sufficiency of the allegations in the Complaint before default judgment is entered. Defendant Cedar Towing expressed a clear desire to challenge the legal sufficiency of the claim in Count Four through its Motion to Dismiss, made in response to Plaintiff's Motion for Default Judgment. The Motion to Dismiss was not made in a timely manner, nor independently, but rather was incorporated into Defendant Cedar Towing's response in opposition to Plaintiff's Motion for Default Judgment. The Motion to Dismiss was not scheduled for hearing before the Court, and was not made in accordance with the procedures established by Local Rule 7/1(b)(2). Plaintiff thus had no opportunity to

respond. The Court ordered the Motion to Dismiss be stricken as untimely, but without prejudice.

In light of Defendant Cedar Towing's expressed desire to challenge the legal sufficiency of Count Four of the Complaint, resolution of Plaintiff's Motion for Default Judgment as to Count Four should be deferred until Defendant has an opportunity to present its Motion to Dismiss in accordance with the Rules of this Court. This will allow Defendant Cedar Towing to make a proper Motion to Dismiss Count Four if it so desires, and will allow the issue of whether or not that count states a claim to be properly joined. After the legal sufficiency of Count Four has been examined, the Court can make an informed decision about whether or not default judgment on that count is appropriate.

The only remaining procedural step with respect to the defaulted claims (Counts Five and Six) is a hearing to determine the amount of damages to assess against Cedar Towing on those Counts. See Fed. R. Civ. P. 55(b)(2); Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001)("When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding.")(citations omitted). In his Complaint [Docket No. 1], Plaintiff prays for an award of monetary relief against all Defendants jointly and severally. The Court is therefore guided by the words of the Eighth Circuit in Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 433 (8th Cir. 1992):

> When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved. This is not because the nondefaulters would be bound by the damage determination

> against the defaulters, but to avoid the problems of dealing with inconsistent damage determinations against jointly and severally liable defendants.

See also Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1324 (7th Cir. 1983)(where liability is joint and several, entry of default judgment against fewer than all defendants is proper, but a damages hearing may not be held until the liability of each defendant has been resolved).

Accordingly, we recommend that default judgment be entered against Defendant Cedar Towing on Counts Five and Six of the Complaint. We further recommend that the determination of the damages to be awarded against Cedar Towing be stayed until liability is determined as to the other Defendants in this action.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

(1) Defendant Mudek's Motion for Relief of Default, for Leave to File Untimely Answer, and to Amend Pretrial Schedule [Docket No. 21] be granted;

(2) Plaintiff's Motion for Default Judgment against Defendants Cedar Towing and Mudek [Docket No. 8] be denied as to Defendant Mudek;

(3) Defendant Cedar Towing's Motion for Relief of Default, for Leave to File Untimely Answer, and to Amend Pretrial Schedule [Docket No. 16] be denied; and

(4) Plaintiff's Motion for Default Judgment against Defendants Cedar Towing and Mudek [Docket No. 8] be granted as to Defendant Cedar Towing with respect to Counts Five and Six of the Complaint.

Dated:August 9, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 24, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 24, 2001**.

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500